J-E01004-18

2018 PA Super 217

| ADAM K. KAPCSOS | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MALISHA J. BENSHOFF | : | |
| | : | |
| Appellant | : | No. 227 WDA 2016 |

Appeal from the Judgment Entered March 8, 2016,
In the Court of Common Pleas of Cambria County Civil Division at No(s):
No. 2014-4183.

BEFORE:   BENDER, P.J.E., PANELLA, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY KUNSELMAN, J.:                                     FILED JULY 27, 2018

Adam K. Kapcsos moved for en banc reargument of Malisha J. Benshoff's appeal in this partition action.  We granted his motion.  However, during our deliberations of the issues that Ms. Benshoff raised on appeal, we discovered a significant procedural error by the parties in the trial court.  Because this procedural error is fatal to our appellate jurisdiction and the judgment entered below, we must quash this appeal.

Mr. Kapcsos and Ms. Benshoff purchased a piece of real estate "as joint tenants with the right of survivorship."  N.T., 5/27/15, Plaintiff's Exhibit A.  A few years later, their relationship soured, and Mr. Kapcsos filed a "Complaint in Partition." Complaint, at 1.  In his prayer for relief, Mr. Kapcsos requested that the trial court "enter an Order awarding him the property," because he had paid, among other things, all of the acquisition costs, years of mortgage on his own, taxes, and various up-keep and remodeling expenses.  Complaint,

at 2.[1] Ms. Benshoff filed an Answer and Counterclaim, in which she sought partition and an equitable award based upon her ½ interest in the property. Mr. Kapcsos replied to her Counterclaim, and the pleadings then closed.

_____

[1] By seeking an award of the property, Mr. Kapcsos failed to pray for the equitable relief of partition but, rather, sought a legal relief that could only flow from a quiet title action. Ms. Benshoff filed no preliminary objections.

When, as here, a mortgage encumbers the title, the prayer for relief in a partition complaint properly prays as follows:

Wherefore, plaintiffs pray for judgment:

1. For a finding and adjudication that plaintiffs are the owners and holders of undivided interests in the above-described real property as hereinabove set forth.

2. For a partition of said real property, according to the respective rights of the parties therein, with equal division and allocation of the line of the balance of said mortgage between the parcels so apportioned to the parties.

3. If a partition of said real property cannot be had without material injury to the rights of the parties, that the property be sold and the proceeds applied as follows:

   a. To the payment of the general costs of the action;

   b. To the costs of reference, if any;

   c. To satisfy and cancel of record the lien of said mortgage by payment of the sum due or to become due thereon;

   d. To the payment of reasonable attorneys' fees incurred for the common benefit of the parties in this action; and,

Next, Mr. Kapcsos filed a certificate of readiness, requesting a bench trial to divide the property. That trial occurred, and the court entered an order equitably carving-up the property, even though no one had moved for an order legally partitioning it. As a result, the trial court has never entered an order of partition with the Recorder of Deeds of Cambria County.[2]

After the trial, the court of common pleas ordered:

> that upon payment of the owelty of $7,011.33 to [Ms.] Benshoff and proof that the mortgage has been refinanced to remove [Ms.] Benshoff as a debtor, [Mr.] Kapcsos is awarded title to the real estate and that [Ms.] Benshoff shall execute a deed in favor [of Mr.] Kapcsos at that time. Payment of the owelty and transfer of the property shall occur within forty-five (45) days unless the Court, for good cause shown, extends this time.

Trial Court Order, 7/10/15. Ms. Benshoff filed exceptions, which the trial court overruled in a January 11, 2016 Order.

Ms. Benshoff appealed. A three-judge panel of this Court affirmed in part and revered in part. We granted reargument en banc.

_____

> e. To distribute the residue among the owners of the property according to their respective rights and interests therein.
>
> 4. For such other and further relief as the court may deem just and equitable.

23 Standard Pa. Practice 2d §122:65 at 82.

[2] We hereby take judicial notice that the records of the Recorder of Deeds of Cambria County contain no order dividing the parties' interests in the property in severalty. See Pennsylvania Rule of Evidence 201.

Although neither party has challenged our jurisdiction, we may always consider that question on our own motion. See, e.g., M. London, Inc. v. Fedders Corp., 452 A.2d 236, 237 (Pa. Super. 1982). We raise the issue of our jurisdiction now, because we have uncovered a procedural error in the record that prevents us from addressing the merits of this appeal.

"Jurisdiction is purely a question of law; the appellate standard of review is de novo and the scope of review plenary." Commonwealth v. Seiders, 11 A.3d 495, 496–97 (Pa. Super. 2010).

We begin by discussing proper procedure for a partition action, due to its unique nature and the dearth of appellate precedent in this rarely litigated, often confusing, area of the law. Pennsylvania Rules of Civil Procedure 1551 – 1574 split a partition action into two, distinct, chronological parts. Rules 1551 – 1557 govern Part 1, and Rules 1558 – 1574 govern Part 2. Each part, by rule, must produce its own, distinct, appealable order.

The first order, under Pa.R.Civ.P. 1557, directs partition of the parties' legal interests into severalty. See Johnson v. Gaul, 77 A. 399, 400 (Pa. 1910) ("partition is a possessory action; its purpose and effect being to give to each of a number of joint owners . . . his [or her] share in severalty").

The second order, under Pa.R.Civ.P. 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.

In Part 1, the court must determine whether the property is partitionable under law. In other words, Part 1 is to ascertain:

    I.  Do the parties jointly own the real estate in question?

    II.  If so, what fractional legal interests in the property does each party hold?

The answers to these questions may be admitted in the pleadings, or, if they are not, a hearing or jury trial may be needed. If the trial court answers both questions and finds that the plaintiff has established a right to partition, Rule 1557 dictates:

> the court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property. No exceptions may be filed to an order directing partition.

Critically, any party may immediately appeal that order under Pennsylvania Rule of Appellate Procedure 311(a)(7) (permitting some interlocutory appeals as of right). After a Part 1 order of partition becomes final (either because no one appeals or an appellate court affirms it), only then may parties proceed to Part 2, where the actual division, award, or sale of the partitioned property occurs.

Volume 23, Chapter 122 of STANDARD PENNSYLVANIA PRACTICE 2d sets out the proper procedure for a partition action in minute detail. Adherence to the specific process designed for partition actions is critical to safeguard the rights at stake, as illustrated in DeLoatch v. Murphy, 535 A.2d 146 (Pa. Super. 1987). There, the chancellor entered a Part 1 order directing partition and appointed a master to divide the estate. DeLoatch died. Her

daughter/executrix moved to substitute as plaintiff and complete the lawsuit. Murphy objected, claiming ownership of the whole property through his right of survivorship. This Court rejected his argument, because the joint tenancy with right of survivorship terminated when the Recorder of Deeds recorded the Part 1 order directing partition. That severed DeLoatch and Murphy's joint tenancy into two, divided, ½ interests in the property. Thus, they held title in severalty, rather than jointly, at DeLoatch's death. With their interests severed, DeLoatch's title passed to her estate, rather than to Murphy. But, had the Part 1 order not been recorded at DeLoatch's death, Murphy would have taken the whole property through survivorship, and DeLoatch's heirs would have inherited nothing.

Therefore, the entry and recording of a Part 1 order directing partition[3] is essential to terminate a joint tenancy. Following that, Part 2 is purely an equitable proceeding where the trial judge or master balances the equities to decide what form the partitioning will take. If the property were a pie, the trial court must decide how best to serve it to the parties. There are three ways "to slice" the "pie."

First, the court may determine that the pie should be cut into several pieces and award the pieces of property to the parties as their severally owned parcels (i.e., "purparts") of land. See Pa.R.Civ.P. 1560. This typically occurs when the pie is so large and the parties so few in number that everyone can

_____

[3] A sample, proposed "Order Directing Partition" is available in 23 Standard Pa. Practice 2d §122:78 at 98-99.

receive a fairly sizable and valuable piece. If the court takes this course, in the end, it will convey ownership to the parties by its Part 2 order, which the Recorder of Deeds will record. No deed is executed, because the order serves as the conveyance. The court determines the size and location of each party's parcel based upon the parties' interests and what the court deems to be equitable given the facts and circumstances of the case.

Second, the court might determine that the pie cannot be cut without ruining it.[4] If that happens, the court may give the whole pie to one party and order that person to pay the other parties for their respective shares. See Pa.R.Civ.P. 1562. In this scenario, one party gets an order of conveyance granting undivided title to the whole property (which is recorded), and the other party receives a cash buy-out, known as "owelty." Id.

The court calculates the owelty based upon the equities of what everyone invested in the land. It takes those investments and then divides them by each parties' fractional interest in the property, as determined in Part 1. See Weiskircher v. Connelly, 93 A. 1068, 1096 (Pa. 1915) (Awarding acquisition costs, taxes, mortgage payments, rents, etc. when deciding the

_____

[4] For a Dickensian partitioning that ruined the pie by slicing it into ridiculously small pieces, see Turner v. Morgan, 8 Ves. 143, 32 Eng. Rep. 307 (1803). There, the parties jointly owned a townhouse in Portsmouth, England. When they would not settle or agree to a sale, the Lord Chancellor Eldon "allotted to the Plaintiff the whole stack of chimneys, all the fire-places, the only staircase in the house, and all the conveniences in the yard." Id. at 145 n. 1. The remainder of the house went to the defendant.

owelty, but only by "one half" to reconcile owelty with each party's ½ interest in the property) (emphasis added).

Finally, if neither of the first two scenarios are possible, the court's third option is to order a sale of the pie to the general public and divide the proceeds (if any) among the parties. Once all court costs, attorneys' fees, mortgages, etc. are satisfied from the sale's proceeds, the court awards any remaining funds to the parties according to their investments in the land, divided by their fractional interests, as determined in Part 1.

In the case at bar, the parties did not request and, therefore, the trial court never entered a Part 1 order directing partition under Rule 1557. As a result, the rights of the parties' heirs are in jeopardy, because the deed, which is the last conveyance of record, grants Mr. Kapcsos and Ms. Benshoff a joint tenancy with right of survivorship. The order directing partition, which should have been entered and recorded in the Office of the Recorder of Deeds, would have eliminated that right of survivorship. But, as things stand currently, if one party dies, the surviving party would acquire the property as a whole by operation of law, and the heirs of the decedent would inherit nothing.

"[M]ere pendency of an action in partition, without more, is insufficient to work a severance of the joint tenancy, whereupon an abatement occurs upon the death of one of the joint tenants." Sheridan v. Lucey, 149 A.2d 444, 446 (Pa. 1959) (emphasis added). The Sheridan Court reasoned that, until the Rule 1557 order of partition is final and recorded, the plaintiff still "has an election to continue the proceedings to judgment, thus affecting a

severance of the joint estate, or discontinuing the action and leaving the joint tenancy in status quo." Id.

Here, at the close of the pleadings, Mr. Kapcsos filed a certificate of readiness, and the judge scheduled the conference anticipated by Rule 1558. Hence, the parties erroneously skipped Part 1 and moved directly to Part 2. Moreover, instead of arguing this case strictly under property law, they seem to have treated it like a family law matter of equitable distribution. See N.T., 5/27/15, at 61 (misapplying "a little bit of the Divorce Code").

In deciding Part 2, the trial judge conditionally awarded the property to Mr. Kapcsos. The court made that award subject to Mr. Kapcsos' payment of owelty to Ms. Benshoff and a refinancing of the mortgage to remove Ms. Benshoff as a debtor.[5] Once Mr. Kapcsos met the conditions to obtain title,

_____

[5] Refinancing the mortgage is inappropriate in a partition action, because the mortgage follows the land, however it is ultimately divided.

> The rights of tenants in common to make partition and to enjoy all the incidents connected therewith are paramount to the rights of a lien creditor against any one of the tenants. Every mortgage or judgment creditor of the individual cotenant takes his encumbrance subordinate to paramount rights of the cotenants, and his encumbrance creates no obstacle to the working out of the partition with all of the incidents that may by law attach.

> In case of a lien on the interest of a cotenant to whom a purpart is allotted in severalty, the lien follows the separation and attaches only to the estate so taken, but is discharged as to the other purparts. In like manner, the security of a mortgage follows the separation and attaches to the estate held in severalty.

the court ordered Ms. Benshoff to execute a deed in favor of Mr. Kapcsos. Thus, instead of partitioning the property via a Part 1 order and conveying the title in a Part 2 order,[6] the judge directed specific performance – namely, that Ms. Benshoff transfer her ½ interest via a deed to Mr. Kapcsos. We note that specific performance does not comport with Rule 1570.

We also recognize that partition actions are not very common and, thus, that the bench and bar may be unfamiliar with their procedural peculiarities. In fact, we recently uncovered an identical mishap in a Butler County case – Zablocki v. Beining, 155 A.3d 1116 (Pa. Super. 2017) reargument denied (Apr. 11, 2017), appeal denied, 172 A.3d 1121 (Pa. 2017).[7] There, after the pleadings had closed, the case sat dormant for seven years. "No order was entered by the trial court directing partition, and the next activity on the docket was . . . a motion for a status conference." Id. at 1117. The trial

_____

23 Standard Pa. Practice 2d 122:170 (citing Bavington v. Clarke, 2 Penr & W 155 (Pa. 1830); Long's Appeal 77 Pa. 151 (1874); Wright v. Vickers, 81 Pa. 122 (1876); Appeal of McCandless, 98 Pa. 489 (1881); Stewart v. Allegheny National Bank, 101 Pa. 342 (1882); Duke v. Hague 107 Pa. 57 (1884); Reed v. Fidelity Ins., Trust, & Safe Deposit Co., 6 A. 163 (Pa. 1886); McKnight v. Bell, 19 A. 1036 (Pa. 1890); and Bingaman v. McCandless, 55 Pa. Super. 155 (1913)).

[6] A sample, proposed Part 2 order is available in 23 Standard Pa. Practice 2d §122:140 at 166-167.

[7] Ironically, Zablocki v. Beining, 155 A.3d 1116 (Pa. Super. 2017), came before the same argument panel that had originally (and mistakenly) reached the merits in this matter.

judge held the status conference, a master concluded that a public sale was necessary, the Zablockis filed exceptions, and the trial judge overruled them.

On appeal, we quashed. The parties believed that the order adopting the master's finding and directing a sale (a Part 2 order) was appealable as an interlocutory order. However, this Court concluded that they had confused a Part 2 order with the Part 1 order "that must be made prior to master proceedings." Id. at 1118 (emphasis added).

This Court en banc agrees with Zablocki that a Part 1 order must precede Part 2. In addition, we hold that the failure of the parties to secure and record a Part 1 order partitioning the property deprived the trial court of jurisdiction to conduct Part 2. If the property is never partitioned via a Part 1 order, the court has nothing to divvy-up in Part 2, because the parties still own undivided interests in the whole. A Part 1 order must first disentangle their legal interests and extinguish rights of survivorship. Also, recording a Part 1 order is absolutely imperative to protect the various rights of the parties and their heirs. See Sheridan, supra, and DeLoatch, supra.

In conclusion, by not seeking a Part 1 order to divide their legal interests in the property into severalty, the parties never completed Part 1 of these proceedings. Thus, the Part 2 trial that occurred and all relief that Mr. Kapcsos and Ms. Benshoff obtained from it were "nullit[ies]." See Mischenko v. Gowton, 453 A.2d 658, 660 (Pa. Super. 1982). As a result, once the trial judge partitions the joint property via a Part 1 order and the Recorder of Deeds has recorded it, the parties must retry Part 2 de novo, where both parties may

present any evidence of monetary contributions as off-sets toward the owelty. See Weiskircher, 93 A. at 1096.

Until all of this occurs, we may not decide the merits of the case, for the General Assembly has commanded that we "shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . . ." 42 Pa.C.S.A. § 742 (emphasis added). Because the appealed-from order is a legal nullity, it cannot be a final order. Thus, this Court has no appellate jurisdiction over such an order.

Appeal quashed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/2018